UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

D.J. and W.J., individually and on behalf of G.J.,

        Plaintiffs-Appellants,

    -against-

New York City Department of Education,

        Defendant-Appellee.

**COMPLAINT**

**12-Civ-7009 (PAC)**
**ECF CASE**

      Plaintiffs D.J. and W.J., individually and on behalf of G.J., by their attorneys, Regina Skyer & Associates, L.L.P., as and for their Complaint allege and state the following:

## PRELIMINARY STATEMENT

      1.     Plaintiffs D.J. and W.J., on behalf of their child, G.J., bring this action pursuant to Section 1415(i)(2) of the Individuals with Disabilities Education Improvement Act ("IDEA"), as amended (20 U.S.C. § 1400 *et seq.*), the pertinent implementing regulations promulgated under the Code of Federal Regulations, Article 89 of the New York State Education Law, and Part 200 of the Commissioner's Regulations against the New York City Department of Education (the "DOE"), seeking review and reversal of the State Review Officer's ("SRO") decision dated May 17, 2012.

      2.     An Impartial Hearing was convened with regard to G.J. on August 10, 2011; October 5, 2011; November 28, 2011; and November 30, 2011.

      3.     On January 3, 2012, an Impartial Hearing Officer denied Petitioners' request for reimbursement.

      4.     On February 7, 2012, Petitioners initiated review by filing a Verified Petition for Review with the New York State Education Department's Office of State Review.

5.      Petitioners alleged that the finding of the Impartial Hearing Officer was not well reasoned or thorough and failed to comply with the Regulations of the Commission of Education for such decisions.

6.      Petitioners alleged that the DOE failed to carry its burden of demonstrating that G.J. was offered a Free and Appropriate Public Education.

7.      Petitioners alleged that the DOE failed to carry its burden of demonstrating that a consideration of the equities weighed against an award of reimbursement.

8.      Petitioners alleged that the Impartial Hearing Officer inappropriately determined that the Imagine Academy was not an appropriate and reimbursable placement.

9.      The State Review Officer affirmed the Impartial Hearing Officer's decision, only insofar as he upheld the IHO's holding that G.J. had been offered a Free and Appropriate Public Education.  The State Review Officer did not consider the Parents' allegations about the appropriateness of the Imagine Academy or the equitable considerations in the Decision.

10.      Plaintiffs maintain that the SRO's decision was neither well reasoned nor supported by the record as a whole.

11.      Through this action, Plaintiffs request that this Court:

     a.   Render a determination finding that  the DOE failed to provide G.J. with a Free and Appropriate Public Education for the 2010-2011 school year;

     b.   Render a determination that the Imagine Academy was an appropriate placement for G.J.;

     c.   Render a determination that the equities favor G.J. and his Parents and thus require that the DOE reimburse G.J.'s parents for the Imagine Academy tuition; and

    d.   Find that G.J. and his Parents are entitled to any other further relief as may be just under the circumstances.

## JURISDICTION

12.    This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, and 20 U.S.C. § 1415(i)(2)(A) and (3)(A).  This Court has supplemental jurisdiction over any state law claims herein asserted pursuant to 28 U.S.C. § 1367, as such state law claims form part of the same case or controversy as the claims for which this Court has original jurisdiction.

13.    Venue is proper under 28 U.S.C § 1391(b) because the parties reside in this judicial district.

14.    If successful, Plaintiffs are entitled to costs and attorneys fees under 42 U.S.C. § 1988(b) and 20 U.S.C. § 1415(i)(3)(B) *et seq*.

## PARTIES

15.    Initials are used throughout this Complaint to preserve the privacy and confidentiality of the child, G.J., and the family consistent with the privacy provisions promulgated under section 1417(c) of the IDEA, and the Family Education and Privacy Rights Act, 20 U.S.C. § 1232(g).

16.    Plaintiffs D.J. and W.J. are the parents of G.J.  They reside in Brooklyn, New York.

17.    Defendant DOE is a corporate body, created by Article 52 of the New York State Education Law, CLS Educ. Law § 2550 *et seq.*, that manages and controls the public school system of the City of New York.  On information and belief, the DOE receives funding pursuant to the IDEA, and therefore must comply with that statute's provisions, including providing a

FAPE to all students with educationally handicapping conditions, including G.J., who reside within New York City.  See 20 U.S.C. § 1412.  The DOE's principal place of business is 52 Chambers Street, New York, New York 10007.


## FACTUAL ALLEGATIONS

18.     G.J. initially received special education services at the mandate of New York State's Early Intervention Program and from the New York City Department of Education's Committee on Preschool Special Education.

19.     The Committee on Special Education later determined that G.J.'s  needs could not be met in a public school program and Defendant placed him at in a private school – the School for Language and Communication Disorders in Glen Cove, Long Island from the time he was five years old until he was eight years old.  The Committee on Special Education later determined that G.J.'s needs necessitated placement in a residential facility, and Defendant placed him at the Higashi School in Boston, Massachusetts.

20.     G.J.'s behaviors increased when he attended Higashi, due to a strict protocol which resulted in a significant increase in aggressive behaviors.  The Parents flew to Boston several times in an effort to address these behaviors, however, there were no changes that could be implemented to reduce them.

21.     Dismayed with G.J.'s increasing aggressive behaviors, his Parents removed him from Higashi and enrolled him at the Imagine Academy beginning with the 2005 – 2006 school year. G.J. has remained at the Imagine Academy to the present date.

22.     Prior to the 2010 – 2011 school year, the parties have resolved disputes over tuition reimbursement without the need for a hearing.

23.     On April 16, 2010, one of Defendant's IEP teams convened and recommended that G.J. be placed in a New York State approved non-public school during the summer of 2010 and in a 6:1:1 special class in a specialized school between September 2010 and June 2011. Ex. 1.

24.     There was no dispute between the parties regarding G.J.'s placement during the summer of 2010.

25.     Defendant's witness admitted that G.J. was making progress at Imagine Academy during the 2010 – 2011 school year. however, the Department did not consider placing G.J. at Imagine because it would not receive reimbursement for such a placement from the New York State Education Department.  (*See* Tr. at 52 – 53).  Further, any such decision to place G.J. in a private school setting would be made by a supervisor, who does not participate in the IEP meeting.  (Tr. at 52 – 53).  The team informed the Parents that their hands were tied, and they could not recommend Imagine, even though G.J. was making progress there, because it was not an approved school.  Tr. at 53.

**IMAGINE SCHOOL PLACEMENT**

26. During the 2009 – 2010 academic year at Imagine Academy, G.J. demonstrated improvements in social interaction and communication.  While the improvement was slow, he was on a positive trajectory.  (Tr. at 241 – 242).

27. D.J. testified that in late 2010/early 2011, the Parents and the educational team at the school determined that it would be appropriate to move G.J. to a more vocational program. Such a difficult decision was reached only after consulting with the educational team in the school, professionals outside of the school, and a consideration of the very basic academic skills that he was still working to master.  Given the school's ability to address these skills in a more

real life situation seemed to be "appropriate and enriching for his life."  (Tr. at 242 – 243).

28. Mr. J. testified that there is significant communication between the home and the school, and that he has seen a marked decrease in G.J.'s disregulation and inappropriate behaviors in the home.  (See Tr. at 244 – 246).

29. Mr. J. testified that he is a board member of the school and served as President of the Board.  He received no compensation for this position, and he plays no role in the admission process, rather, he serves on the board to help children with autism for whom there are no otherwise appropriate educational programs.  (Tr. at 247 – 248).

30. Mr. J. testified that he made several attempts to reach out to the school recommended by Respondent, however, none of these calls were returned.  Mr. J. testified that if an appropriate public school was identified for G.J., he would send him to that school, however, as he received no response from Respondent's public school, he decided to re-enroll G.J. at the Imagine Academy.  (Tr. at 249 – 250; Tr. at 252).

31. Mr. J. testified that the employees of the CSE informed him at the April 16, 2010 IEP meeting that either Imagine Academy was a wonderful school or that G.J. was doing wonderfully in the school, but that they could not recommend the school.  Tr. at 243 – 244.

32. As the result of Defendant's failure to provide G.J. with an appropriate educational program and placement, Petitioners returned him to the Imagine Academy for the 2010-2011 ten-month school year and sought reimbursement from the District by Due Process Complaint dated May 13, 2011.

33. In the due process complaint, the Parents alleged that the program recommended by Respondent was inappropriate for G.J., inasmuch as the IEP team simply recommended the 6:1:1 special class that it typically recommends for all students with autism without consideration of

G.J. and his individual needs.  *See* SRO Exhibit A at 2.

34. In the due process complaint, the Parents alleged that the Special Education teacher who participated in the IEP meeting failed to comply with federal and state requirements to do so, as he was not likely to be G.J.'s teacher in the upcoming year and had no other specialized experience supporting his participation.  *See* SRO Exhibit A at 2.

35. In the due process complaint, the Parents alleged that the IEP team failed to provide all necessary and relevant materials to the staff participating from the Imagine Academy during the April 16, 2010 IEP meeting.  *See* SRO Exhibit A at 2.

36. In the due process complaint, the Parents alleged that the IEP team failed to rely upon necessary evaluations to properly gauge G.J.'s current skill levels, and that the IEP failed to quantify G.J.'s academic skills levels or otherwise provide a baseline level from which to work. *See* SRO Exhibit A at 3.

37. In the due process complaint, the Parents alleged that the goals and short-term objectives within the IEP are generic and vague, and the complaint includes allegations that the goals lack appropriate baseline levels of functioning sufficient to guide a teacher to implement the goal.  *See* SRO Exhibit A at 3.

38. In the due process complaint, the Parents alleged that the IEP is devoid of any discussion of any meaningful health and physical management needs for G.J.  *See* SRO Exhibit A at 3.

39. In the due process complaint, the Parents alleged that the IEP contains a transition plan and recommendation for services that is generic and vague; that the IEP team failed to invite the student to participate in the development of such plan; that there was no assessment of the student's vocational interests; and that the IEP included no appropriate goals or objectives

designed to address G.J.'s specific transition plan.  *See* SRO Exhibit A at 3 – 4.

40. In the due process complaint, the Parents alleged that the Behavior Intervention Plan included in the IEP is inadequate inasmuch as it does not address G.J.'s behaviors or provide appropriate strategies or interventions to address or decrease his behaviors.  *See* SRO Exhibit A at 5.

41. In the due process complaint, the Parents alleged that Respondent failed to recommend parent training and counseling in accordance with state and federal requirement.  *See* SRO Exhibit A at 5.

42. In the due process complaint, the Parents alleged that Respondent failed to respond to their repeated calls to the school proposed for G.J. for the 2010 – 2011 school year.  *See* SRO Exhibit A at 5.

43. In the due process complaint, the Parents alleged that the special class in a specialized school fails to offer G.J. a suitable and functional grouping for instructional, speech/language, fine motor, and social/emotional purposes.   *See* SRO Exhibit A at 5 – 6.

44. In the due process complaint, the Parents alleged that Respondent recommended a special class in a specialized school without properly evaluating G.J.'s ability to be placed in such a large and less supportive environment; that the IEP team ignored input from G.J.'s parents, teachers, service providers and other professionals who all share that, based on their interaction, observation, evaluation, and provision of instruction to G.J., he requires a smaller, more supportive program in order to gain an academic benefit; that the IEP team made the program recommendation without taking into consideration G.J.'s individualized educational needs.  *See* SRO Exhibit A at 6.

**Proceedings Before the Impartial Hearing Officer**

45. An Impartial Hearing was convened with regard to G.J. on August 10, 2011; October 5, 2011; November 28, 2011; and November 30, 2011.  Finding of Fact and Decision[1] at 1.

46.     At the August 10, 2011, hearing, the IHO reviewed Petitioner's Hearing Request, read into the record and confirmed the relief that Petitioners were seeking, and Respondent offered an opening statement and introduced nine exhibits into the record. Respondent did not have witnesses available to testify on this date.  Tr. at 5; Tr. at 10 – 11.

47.     At the October 5, 2011, hearing, Defendant presented testimony from one witness, Mr. James Slavin, an employee assigned to administrative duties at its Committee on Special Education office.  Mr. Slavin, who deals with thousands of cases per year, participated as a general education teacher at G.J.'s April 16, 2010 IEP meeting.  Mr. Slavin has never taught a student with a classification of autism, nor has he ever evaluated, observed, or met G.J.  Mr. Slavin testified that the IEP team included only some information provided to them by staff from the Imagine Academy.  Mr. Slavin was unable to recall what information was included, what was not included, and was unable to identify where such information was included in G.J.'s IEP. Mr. Slavin testified that G.J. was making progress at the Imagine Academy during the 2009-2010 school year, however, Defendant's IEP team recommended placement in a 6:1:1 class because they were only permitted to recommend a private school for G.J. based upon supervisory review and approval, which, in G.J.'s specific case, was only provided for the months of July and August.  Mr. Slavin was unable to recall details about what was discussed at the meeting and G.J.'s individualized needs.

48.     Mr. Slavin testified that the IEP failed to include any description of the baseline, or then-present levels of ability, for any of the annual goals or short term objectives.

---

[1] Finding of Fact and Decision refers to the IHO's Decision, issued on January 3, 2012.

49.    Mr. Slavin testified that many aspects of the program recommended for G.J. were based upon DOE policies and prohibitions.

50.    Mr. Slavin testified that the IEP team did not recommend parent training as it was not a function of Defendant's responsibilities and that he did not believe the DOE provided such services.

51.    At the November 28, 2011, hearing, Defendant presented the testimony of one witness, Marcy Rosoff, the Unit Coordinator of P721K, the Roy Campanella Occupational Training Center.

52.    Ms. Rosoff testified that the school offered monthly parent association meetings, however, provided no information about any parent training services offered by the school.

53.    Ms. Rosoff's familiarity with G.J. is limited to a review of his "paperwork;" she never met him or interacted with his teachers or other professionals at Imagine.  Tr. at 106.

54.    Ms. Rosoff was unable to explain how, or whether, G.J.'s IEP was similar to the other students in the proposed class for the 2010 – 2011 school year, as she was not familiar with the students in the proposed class and had no independent knowledge of G.J.  Ms. Rosoff was unable to discuss the functional levels of the students in the proposed class.  Ms. Rosoff was not familiar with the teacher of the class that Respondent maintains G.J. would have been placed in. *See* Tr. at 111 – 112.

55.    Ms. Rosoff was able to provide only general information about the recommended program, but was unable to provide any information regarding the educational services provided to the students, or how the educational services at the school would address G.J's identified special education needs.  Ms. Rosoff did not even know how much individualized instruction

could be provided to G.J. or for that matter any student within the classroom.  Ms. Rosoff did not

know how many adults were in the classroom during the 2010 – 2011 school year.

56.     Ms. Rosoff was unable to explain how, or whether, G.J.'s IEP was similar to the

other students in the proposed class for the 2010 – 2011 school year, as she was not familiar with

the students in the proposed class and had no independent knowledge of G.J.  Ms. Rosoff was

unable to discuss the functional levels of the students in the proposed class.  Ms. Rosoff was not

familiar with the teacher of the class that Respondent maintains G.J. would have been placed in.

*See* Tr. at 111 – 112.

57.     Ms. Rosoff was not aware why G.J. was placed in class Y49 and provided no

testimony that such placement was based upon any criterion or was even appropriate.

58.     Elisa Chrem, the principal of Imagine Academy testified at the hearing on

November 28, 2011.  Ms. Chrem holds a Master's degree  speech/language pathology and a

Master's degree in educational leadership.  Ms. Chrem holds New York State licensure as

teacher of the speech and hearing handicapped, in speech pathology, and as a school building

leader.  Ms. Chrem provided testimony about Imagine Academy's enrollment, staffing, and

programming for students with Autism.  Ms. Chrem provided testimony about the grouping of

students within classes and described the placement of G.J. in Ms. Cohen's classroom for the

2010-2011 school year based on the similarity of his developmental and academic levels to the

other students in the class and the appropriateness of peer matches so as to allow for group work

and appropriate peer interaction.

59. Merav Cohen, G.J.'s teacher, testified at the hearing on November 30, 2011.  Ms.

Cohen holds a bachelor's degree in elementary education and a master's degree in special

education.  Ms. Cohen is certified to teach elementary and special education in the state of New

York.  Ms. Cohen is employed by Imagine Academy as a head teacher.  Ms. Cohen testified that she developed an individual schedule for each student in her class to accommodate their instructional and related service needs.  In order to do so, Ms. Cohen referred to extensive data possessed by the school regarding each student, spoke with their previous teacher and/or therapists, and developed appropriate goals for the 2010 – 2011 school year.  Ms. Cohen testified that she conducted assessments of each of the students in her class, constantly re-evaluated and re-assessed their progress towards goals and skill attainment, and modified the instruction provided based upon each such reassessment.  Ms. Cohen testified that her class had five adults in it during the 2010 – 2011 school year.  Tr. at 190.

60. Ms. Cohen testified that she initially provided G.J. with academic programs, including letter recognition, sight word recognition, labeling of items, identifying colors and coins, and other desk type work, similar to those used with him in the past.  As the year progressed, it became clear that this was not accomplishing the desired result and the decision was made, in conjunction with the Parents, to provide an increased amount of pre-vocational and vocational programming.  Tr. at 193 – 195.

61. Ms. Cohen testified that with this change G.J. demonstrated increased engagement with such real world application of these skills.  Ms. Cohen described G.J.'s focus on laundry, cooking, and shopping skills and how academic skills are developed from such tasks as exchanging money for goods, sorting colors, identifying food objects and where these objects belong, and applying them to real life situations.  Tr. at 195 – 196.

62. Ms. Cohen testified that G.J.'s schedule provided significant pre-teaching and preparation for each of the vocational outings and activities to address G.J.'s individualized needs.  *See* Tr. at 198 – 199.

63. Ms. Cohen testified that the G.J. was the subject of conversations between the educational team and Ms. Alana Sanders, the mental health specialist at the school.  These conversations focused on decreasing G.J.'s anxieties, his inappropriate behaviors, and his disregulation throughout the day.  These conversations led to the development of behavioral strategies and a behavior plan that was implemented throughout the school.  *See* Tr. at 207 – 210.

64. Ms. Cohen testified that modifications to G.J.'s educational program and goals were made so as to provide the instruction in a more meaningful fashion.  *See* Tr. at 215 – 217.

65. D.J. testified at the impartial hearing on November 30, 2011.

66. Mr. J testified that during the 2009 – 2010 academic year at Imagine Academy, G.J. demonstrated improvements in social interaction and communication.  While the improvement was slow, he was on a positive trajectory.  Tr. at 241 – 242.

67. Mr. J. testified that in late 2010/early 2011, the Parents and the educational team at the school determined that it would be appropriate to move G.J. to a more vocational program.  Such a difficult decision was reached only after consulting with the educational team in the school, professionals outside of the school, and a consideration of the very basic academic skills that he was still working to master.  Given the school's ability to address these skills in a more real life situation seemed to be "appropriate and enriching for his life."  Tr. at 242 – 243.

68. Mr. J. testified that there is significant communication between the home and the school, and that he has seen a marked decrease in G.J.'s disregulation and inappropriate behaviors in the home.  *See* Tr. at 244 – 246.

69. Mr. J. testified that tuition for the 2010 – 2011 academic year was $77,500, and that he paid this in full.  Tr. at 246 – 247; Exh. A; Exh. H.

70.     The IHO, in his Decision, determined that G.J. was provided with a FAPE during the 2010 – 2011 academic year (Decision at 15); that the Parents did not satisfy the burden placed upon them to demonstrate that Imagine Academy met the Prong II requirement of the Burlington/Carter test (Decision at 15 – 19) and that equities do not favor the Parents. Decision at 19.

71. The Decision in this regard is not supported by reference to the record evidence and applicable law, and provides only seven total citations to the Act, the Regulations implementing the Act, or case law.  Further, these references are provided only in a broad and general fashion to set out the burden of Respondent.  (Decision at 13 – 14).  Indeed the Decision is devoid of any citation to the record, or to case law with regard to the majority of the Decision.  Further, the IHO arbitrarily rejected multiple arguments made by Petitioners holding that they are without merit, without applying the law to the facts or otherwise providing any support for his Decision. *See* Decision at 14 – 19.

72. The Decision contains misstatements of the facts, assumes evidence not contained within the record, and then misapplies this evidence to the facts.  For example, the IHO states that a 1:1 program is "a severely restrictive environment on the continuum." (Decision at 13). The IHO, however, ignores the fact that no testimony regarding the "continuum" was offered, and the only testimony regarding a 1:1 program provided by Respondent is that it would "never provide a 1:1 ratio," because you would have thousands of classes," regardless of need.  Tr. at 91.

### The State Review Officer's Decision

73.     The SRO issued a decision on May 17, 2012, denying Plaintiffs' Appeal.

74.     The SRO initially addressed "whether the district waived any claims relating to the equities because it failed to assert them in its response to the due process complaint notice."[2] SRO Decision at 7-8.

75.     No party ever claimed that the district waived any such claim for failure to assert it in the due process response.

76.     The SRO improperly limited the scope of his review, failed to consider the record in its entirety, and failed to consider all allegations of the parties on appeal.

77.     The SRO improperly held that Defendant offered G.J. a Free and Appropriate Public Education, dismissing each of Plaintiffs' allegations by relying on evidence that did not support his conclusions.

78.     The SRO improperly held that Defendant offered G.J. a Free and Appropriate Public Education by incorrectly applying the law to the record evidence.

79.     The SRO excused repeated failures by Defendant to comply with state and federal law.

80.     The SRO's determinations on these issue are arbitrary and capricious, in violation of the law, and not supported by the record below.

81.     The SRO did not reach the questions of whether Imagine Academy was an appropriate placement for G.J. or whether the equities favored G.J.'s parents.

**First Claim for Relief**
**(Denial of FAPE in Violation of the IDEA)**

82.     Plaintiffs repeat and reallege the allegations stated in paragraph 1 through 81 as if fully set forth herein.

---

[2] Federal Regulation requires that a school district respond to the allegations contained within a due process request.  34 CFR 300.508(e).

83.     In violation of the IDEA, 20 U.S.C. § 1400 *et seq.*, Defendants denied G.J. a FAPE for the 2010-2011 academic year.  Such denial results from the substantive inadequacies in the IEP and the proposed placement at P.S.721K, as described above or as otherwise may be established.

### Second Claim for Relief
### (Denial of Rights Under Section 504 of the Rehabilitation Act)

84.     Plaintiffs repeat and reallege the allegations stated in paragraphs 1 through 81 as if fully set forth herein.

85.     By failing to confer the benefits provided to G.J. under the IDEA as amended (20 U.S.C. § 1400 *et seq.*), Defendants have violated Section 504 of the Rehabilitation Act (29 U.S.C. § 794) and the regulations promulgated thereunder.

### Third Claim for Relief
### (Denial of Rights Under New York State Law)

86.     Plaintiffs repeat and reallege the allegations stated in paragraphs 1 through 81 as if fully set forth herein.

87.     Defendants have violated Article 89 (N.Y. Educ. Law § 4400 *et seq.*) and regulations promulgated thereunder by failing to provide G.J. with a FAPE as set forth above or otherwise is established.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court:

a.      reverse the SRO's decision of May 17, 2012;

b.      hold that the DOE failed to provide G.J. with a Free and Appropriate Public Education for the 2010-2011 school year;

c.      hold that the Imagine Academy was appropriate for G.J. for the 2010-2011 school year;

d.      order the DOE to reimburse Plaintiffs for tuition paid to the Imagine Academy for the

2010-2011 school year;

e.      declare that Plaintiffs are the substantially prevailing party;

f.      grant leave, pursuant to governing law, to Plaintiffs' counsel to submit a fee application

for the purpose of recovering statutory attorneys fees and other recoverable costs incurred at the

administrative level, the SRO level, and in this action; and,

g.      grant Plaintiffs any additional relief as the Court deems appropriate.

Dated: New York, New York
       September 14, 2012

                     Respectfully Submitted,

                     **SKYER & ASSOCIATES, L.L.P.**

By:    /s/_____
           JESSE COLE CUTLER
           SKYER & ASSOCIATES, L.L.P.
           276 Fifth Avenue, Suite 402
           New York, NY 10001
           (212) 532-9736
           jcutler@skyerlaw.com

           *Attorneys for G.J.*