```
USDC SNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  August 15, 2013
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
D.J. and W.J., individually and on behalf of :
G.J., :
: 
        Plaintiffs-Appellants, :
:
  - against - :   12 Civ. 7009
:
NEW YORK CITY DEPARTMENT OF :
EDUCATION, :   OPINION & ORDER
:
        Defendant-Appellee. :
------------------------------------------------------- x

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiffs D.J. and W.J. sue the New York City Department of Education (the "DOE"), individually and on behalf of their son, G.J., under the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act of 1973 and Article 89 of the New York Education Law. Plaintiffs request that the Court find that the DOE failed to provide G.J. with a free appropriate public education ("FAPE") and that enrolling G.J. at the Imagine Academy for Autism ("Imagine") was appropriate, and order the DOE to reimburse Plaintiffs for $77,500 tuition paid to Imagine. On January 18, 2013, Plaintiffs moved for summary judgment. The DOE cross-moved for summary judgment on March 20, 2013. For the reasons discussed below, the DOE's motion for summary judgment is granted and Plaintiffs' motion for summary judgment is denied.

## BACKGROUND

    G.J. was born in 1995. He has autism, is unable to read or write whole words, and his use of numbers and math is limited. On April 16, 2010, a Committee on Special Education ("CSE") was convened to prepare an individualized education program ("IEP") for G.J. In addition to his

parents, the CSE was attended by a school psychologist, a district representative, a social worker, a special education teacher, and G.J.'s teacher, speech/language, occupational, and Floortime[1] therapists from Imagine,[2] where he has been enrolled since 2005. The CSE recommended that G.J. attend the HASC Parksville summer program for the summer of 2010 and then be placed in a class with six students, one teacher, and one paraprofessional – a 6:1:1 ratio – at a specialized school for the 2010-2011 academic year, with additional occupational therapy and speech/language therapy scheduled several times per week.

On June 10, the DOE sent a Final Notice of Recommendation to D.J. and W.J., offering G.J. enrollment at PS K721 in Brooklyn. PS K721 offered a variety of different class sizes including one with a 6:1:1 ratio, as well as both occupational and speech/language therapy. D.J. and W.J. did not visit PS K721, rejected the DOE's offer and re-enrolled G.J. at Imagine. They filed a due process complaint and impartial hearing request on May 13, 2011, alleging that G.J. had been deprived of a FAPE due to a variety of substantive and procedural problems. Impartial Hearing Officer Marc Weiner (the "IHO") conducted a four day hearing between August and November, 2011.

On January 3, 2012, the IHO issued his findings of fact and decision, in which he denied D.J. and W.J.'s request for tuition reimbursement, concluding that the DOE had offered G.J. a FAPE and that Imagine was an inappropriate placement for him. D.J. and W.J. appealed the IHO's decision, and, on May 17, 2012, State Review Officer Justyn Bates (the "SRO") affirmed the IHO's decision, finding that the DOE had offered G.J. a FAPE. The SRO did not address the

---

[1] Floortime is "an educational technique centered around playful one-on-one interactions between students and staff members while engaged in an activity of the student's choice, by which staff aim to 'meet the child at their developmental level and then to move them ahead.'" A.D. v. Bd. Of Educ. of City School Dist. of City of N.Y., 690 F. Supp. 2d 193, 199 (S.D.N.Y. 2010).

[2] Imagine, at which approximately 21 students were enrolled, is not a New York State approved private school. It was co-founded by D.J., who also served as president of its board of trustees.

appropriateness of Imagine. Plaintifs' appeal to this Court followed on September 17, 2012.

## DISCUSSION

### I. Legal Standard

The primary object of the IDEA is to provide disabled students with a FAPE, 20 U.S.C. § 1400, which is to be "provided in conformity with an" IEP. 20 U.S.C. § 1401. Among the procedural safeguards in place to guarantee the provision of a FAPE, "New York State has implemented a two-tier system of administrative review." Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Centr. Sch. Dist., 386 F.3d 158, 160 (2d Cir. 2004). "At the first level of review, an impartial hearing officer appointed by the local board of education conducts a due process hearing." M.M. ex rel. J.M. v. New York City Dept. of Educ., No.09 Civ. 5236, 2010 WL 2985477, *2 (S.D.N.Y. July 27, 2010). "Following the decision of the IHO, an aggrieved party may appeal to a state review officer." Id. "After exhausting this two-step administrative process, any party still aggrieved may bring a civil action challenging the decision in federal or state court." R.B. v. New York City Dept. of Educ., 713 F. Supp. 2d 235, 238 (S.D.N.Y. 2010).

"Federal courts assess IDEA petitions based on the 'preponderance of the evidence developed at the administrative proceedings and any further evidence presented by the parties.'" M.S. ex rel. S.S. v. Board of Educ. Of the City Sch. Dist. of Yonkers, 231 F.3d 96, 102 (2d Cir. 2000) (quoting Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 122-23 (2d Cir. 1998)). The "independent" judicial review "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S.176, 206 (1982). "While federal courts do not simply rubber stamp administrative decisions, they are expected to give 'due weight' to these proceedings, mindful that the judiciary generally 'lacks the specialized

knowledge and experience necessary to resolve persistent and difficult question of educational policy.'" Walczak, 142 F.3d at 129 (quoting Rowley, 458 U.S. at 206). With respect to various challenges that may be brought under the IDEA, the Second Circuit has instructed that "determinations regarding the substantive adequacy of an IEP" or "appropriate educational methodology" are entitled to greater deference than objections to flaws in the administrative process itself. M.H. v. New York City Dept. of Educ., 685 F.3d 217, 244 (2d Cir. 2012). "And the district court should afford more deference when its review is based entirely on the same evidence as that before the SRO than when the district court has before it additional evidence that was not considered by the state agency." Id.

When "a public school fails to provide a FAPE and the child's parents place the child in an appropriate private school without the school district's consent, a court may require the district to reimburse the parents for the cost of the private education." Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 232 (2009). But parents "do so at their own financial risk. If the courts ultimately determine that the IEP proposed by the school officials was appropriate, the parents [are] barred from obtaining reimbursement." Sch. Comm. of Burlington v. Dept. of Educ. of Mass., 471 U.S. 359, 374 (1985). Whether parents are entitled to tuition reimbursement is determined pursuant to the three-part Burlington-Carter test, "which first asks '(1) was the IEP proposed by the school district inappropriate; and (2) was the private placement appropriate to the child's needs;' and then looks to (3) 'equitable considerations relating to the reasonableness of the action taken by the parents.'" M.B. ex rel. L.C. v. Minisink Valley Centr. Sch. Dist., No. 10 Civ. 4222, 2013 WL 1277308, *1 (2d Cir. Mar. 29, 2013) (quoting Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 363 (2d Cir. 2006)); see also Flores Cnty. Sch. Dist. Four v. Carter ex rel. Carter, 510 U.S. 7, 12-13 (1993); Burlington, 471 U.S. at 370.

## II. Analysis

### 1. *Procedural Issues with IEP and Placement at PS K721*

Plaintiffs raise five issues with the process used to determine that G.J.'s placement at PS K721 was appropriate. "Procedural flaws do not automatically require a finding of a denial of a FAPE" unless they "individually or cumulatively result in the loss of educational opportunity or seriously infringe on a parent's participation in the creation or formulation of the IEP." W.S. ex rel. C.S. v. Rye City Sch. Dist., 454 F. Supp. 2d 134, 138 (S.D.N.Y. 2006).

First, Plaintiffs complain that the DOE representative at the IEP meeting failed to review G.J.'s file prior to the date of that meeting to determine whether any updated testing was necessary. The IEP Team is only required to "review existing evaluation data," 20 U.S.C. § 1414(c)(1), and "[a]ny additional assessments need only be conducted if found necessary to fill in gaps in the initial review of existing evaluation data," S.F. v. New York City Dept. of Educ., No. 11 Civ. 870, 2011 WL 5419847, *10 (S.D.N.Y. Nov. 9, 2011). There is no requirement that this be done any number of days prior to the CSE and Plaintiffs have not cited any evidence that additional assessments were necessary for G.J.

Second, Plaintiffs contend that G.J.'s progress reports and recommendation of Imagine personnel did not support placing G.J. in a 6:1:1 environment, but rather that he be provided with individual education in a 1:1 learning environment. Two of the exhibits relied on by Plaintiffs address G.J.'s needs only with respect to speech/language therapy (Ex. 3) and occupational therapy (Ex. 5), both of which were provided for in the IEP in individual sessions. (Ex. 1 at 18.) The IEP does not provide for continued Floortime therapy, but G.J.'s Floortime Progress Report does not contain a specific recommendation that such therapy continues to be necessary for

G.J.'s development. (See Ex. 6.) The final exhibit relied on by Plaintiffs, G.J.'s Special Education Progress Report by his primary teacher at Imagine, does not contain a recommendation regarding the specific ratio of educators to students that is appropriate for G.J. (Ex. 4.) Cumulatively, the exhibits cited by Plaintiffs do not suggest that the IEP disregarded relevant evidence of G.J.'s educational needs. Further, the hearing transcript adequately supports the SRO's determination that G.J. is "able to function without 1:1 teacher support in a variety of educational activities throughout the day." (See SRO Decision at 15-16; see also infra at 9-10.)

Third, Plaintiffs protest the DOE's failure to create a functional behavioral assessment ("FBA") prior to issuing G.J.'s IEP. The Second Circuit has found that an FBA is not necessary where the "IEP provided for strategies to address [the student's] behavior," however, noting that "the sufficiency of [a municipality's] strategies for dealing with [problematic] behavior 'is precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers.'" A.C. ex rel. M.C. v. Bd. of Educ. of Chappaqua Cent. Sch. Dist., 553 F.3d 165, 172 (2d Cir. 2009) (quoting Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 382 (2d Cir. 2003)). G.J.'s IEP includes a Behavior Intervention Plan ("BIP"), which describes those behaviors of G.J. that interfere with learning and provides strategies to address them. (Ex. 1 at 21.) Since "[t]he failure to conduct an FBA does not render an IEP procedurally inadequate where the IEP provides strategies to address the student's behavior," M.N. v. New York City Dept. of Educ., 700 F. Supp. 2d 356, 366 (S.D.N.Y. 2010), the SRO properly concluded that "the provision of a BIP was appropriate to address the student's needs." (SRO Decision at 17.)

Fourth, Plaintiffs charge that the IEP's transitional plan was inadequate and that the DOE failed to involve G.J. in its consideration of the transitional plan. Such claims were not enumerated or detailed below and, accordingly, were not addressed by the SRO. (See SRO

Decision at 9.) The Court declines to address them because they have already been waived.

Fifth, Plaintiffs assert that the DOE failed to evaluate G.J.'s vocational skills, aptitudes and interests. The IDEA, however, "does not compel a school district to perform every sort of test that would arguably be helpful before devising an IEP," particularly where, as here, the student had already been subject to relevant evaluations. Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist., 373 F. Supp. 2d 292, 299 (S.D.N.Y. 2005); see also Connor ex rel. I.C. v. New York City Dept. of Educ., No. 08 Civ. 7710, 2009 WL 3335760, *5 (S.D.N.Y. Oct. 13, 2009). (See, e.g., Ex. 4 at 2 (discussing "Life Skills"), Ex. 6 at 2 (discussing development of "skills needed for a vocational trade").) Accordingly, "the SRO's finding that the CSE relied on sufficient evaluative data in creating [G.J.'s] IEP is supported by the record below." FB v. New York City Dept. of Educ., -- F. Supp. 2d --, 2013 WL 592664, *8 (S.D.N.Y. 2013).

    2. *Substantive Issues with IEP and Placement at PS K721*

        a. Annual Goals and Short Term Objectives

"The 'centerpiece' of the IDEA's education delivery system is the . . . 'IEP,'" Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 192, 197 (2d Cir. 2002) (quoting Honig v. Doe, 484 U.S. 305, 311 (1988)), "a written statement that 'sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives.'" D.D. ex rel. V.D. v. New York City Bd. of Educ., 465 F.3d 503, 507-08 (2d Cir. 2006) (quoting Honig, 484 U.S. at 311). G.J.'s IEP sufficiently sets out both his educational goals and objectives, as well as his then-current baseline functionality.

As acknowledged by the SRO, although G.J.'s teacher "did not provide specific reading and/or math levels for the student in his IEP, the . . . academic performance section of the IEP

described the student's functioning level" based on "documents" and "input from the student's then-current teacher, speech language and OT providers, in addition to his Floortime specialist." (SRO Decision at 13 (citing Tr. at 43, 46-50, 82-83; Ex. 1 at 3-4; Exs. 3-6, 8).) Having reviewed the transcript and documents cited by the SRO, the Court affirms its conclusion that "based on the totality of information, the CSE had a full understanding of the student's then-present levels of functioning and his needs" (id.), as set out in the IEP. (See Ex. 1 at 3-4 ("Academic Performance and Learning Characteristics"), 5 ("Social/Emotional Performance"), 6-7 ("Health and Physical Development").) With reference to G.J.'s established baseline, the IEP goes on to adequately set forth his "Annual Goals and Short Term Objectives" (see id. at 8-15), to which Plaintiffs fail to set forth any specific objections beyond a generalized complaint that they are "vague and unmeasurable." Escambia v. Benton, 406 F. Supp. 2d 1248, 1275 (S.D. Ala. 2005). The Court finds that the goals and short-term objectives set forth in the IEP are satisfactory.

    b. Parent Training and Counseling

Myriad regulations require that, for autistic children, "provisions . . . be made for parent counseling and training . . . for the purpose of enabling parents to perform appropriate follow-up intervention activities." 8 N.Y.C.R.R. § 200.13(d); see also 8 N.Y.C.R.R. § 200.1(qq), (kk); 8 N.Y.C.R.R. § 200.4(d)(2)(v)(b)(5); 34 C.F.R. § 300.34. While required, "the failure to include parent counseling in the IEP is [a] less serious . . . omission," which, "in the ordinary case . . . , is not sufficient to warrant reimbursement." R.E. v. New York City Dept. of Educ., 694 F.3d 167, 191 (2d Cir. 2012). The DOE was mistaken in its belief that it was not required to provide for parental training and counseling in the IEP and it erred in failing to do so. (See Tr. at 76-77.) Nevertheless, PS K721 provided parent workshops "based upon the [] needs of the student" (id. at 86-89), as well as monthly parent association meetings on a variety of "important" topics

related to "transition and planning for the future" of its students. (Id. at 106.) Accordingly, and with deference to the SRO and IHO's educational expertise, the Court agrees with the SRO that although the DOE's failure to explicitly include parental counseling and training in the IEP violated the IDEA and New York law, it "did not result in any substantive harm, nor did it . . . rise to the level of a denial of a FAPE" to G.J. because "parent counseling and training [were] available at the assigned school." (SRO Decision at 18.)

### c. Class Size

New York law mandates that "[t]he maximum class size for special classes containing students whose management needs are determined to be highly intensive, and requiring a high degree of individualized attention and intervention, shall not exceed six students, with one or more supplementary school personnel assigned to each class during periods of instruction." 8 N.Y.C.R.R. § 200.6(h)(4)(ii)(a). Within the general parameters of 8 N.Y.C.R.R. § 200.6, class size and student-teacher ratios "involve questions of methodology more appropriately answered by the state and district decision-makers" than by federal judges. Watson ex rel. Watson v. Kingston City School Dist., 325 F. Supp. 2d 141, 145 (N.D.N.Y. 2004); see also M.H. v. New York City Dept. of Educ., No. 10 Civ. 1042, 2011 WL 509880, *12 (S.D.N.Y. Feb. 16, 2011). Although Plaintiffs contend that "G.J. required consistent prompting and direct 1:1 instruction throughout the day" (Pl. Br. at 17), they do not cite any evidence in the record that supports their assertion. (Contra Ex. 3 at 1 (Imagine provided speech and language therapy to G.J. both individually and in a group with another student).) In contrast, the SRO provides a thorough and well-reasoned discussion, including numerous references to the record that have been reviewed by the Court, in support of the conclusion that the placement of G.J. in a 6:1:1 class, with an additional overlay of frequent 1:1 therapeutic services, "was appropriate to address [G.J.'s]

9

needs." (SRO Decision at 16-17.)

For the foregoing reasons, the Court affirms the SRO's decision as to the appropriateness of the IEP and the recommended placement of G.J. at PS K721. Accordingly, it is not necessary for the Court to consider the appropriateness of enrolling G.J. at Imagine or whether the equities favor reimbursement.

## CONCLUSION

The DOE's motion for summary judgment is granted and Plaintiffs' motion for summary judgment is denied. The Clerk of Court is ordered to enter judgment and close this case.

Dated: New York, New York
       August 15, 2013

                                                      SO ORDERED

                                                      _____
                                                      PAUL A. CROTTY
                                                      United States District Judge